UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF   )
                                 )
CELLULAR TELEPHONE OF            )          MAGISTRATE NO.20-1957
LAWRENCE LOUIS ATTISANO          )          **UNDER SEAL**

## AFFIDAVIT FOR SEARCH WARRANT

## INTRODUCTION

I, William Davis, being duly sworn, state as follows:

1.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) assigned to the Pittsburgh, Pennsylvania (PA) field office.  I have been employed as a Special Agent for the ATF since 2018.  Between 2014 and 2018, I served as a Special Agent at the South Carolina Law Enforcement Division (SLED).  During that time, I was assigned to the state narcotics division and served as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) Columbia, South Carolina Violent Gang Task Force.

2.      As part of my current duties, I investigate violations of federal arson laws, including Title 18, United States Code Section (U.S.C. §) 844(i), Use of Fire to Destroy Property Affecting Interstate Commerce.  I have become familiar with federal laws addressing arson cases.  I know that since at least 1985, United States Courts have routinely considered rental residences as being used in, or affecting interstate commerce (Russell v. United States, 471 U.S. 858 (1985)).

3.      As a federal agent, your affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 412-420-7611, which information is stored at premises controlled by Cellco Partnership dba Verizon Wireless a wireless telephone service provider headquartered at c/o CT Corporation System, 150 Fayetteville St., Box 101, Raleigh, NC 27601-2957.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Cellco Partnership dba Verizon Wireless to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate and seize the items described in Section II of Attachment B.

5.      The statements in this affidavit are based in part on my investigation of this matter, including my personal observations, my training and experience, and on information provided by other law enforcement agents.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of a violation of Title 18 U.S.C. § 844(i) (Use of Fire to Destroy Property Affecting Interstate Commerce) will be located within the records to be searched. Based on the facts set forth in this Affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 844(i) has been committed by Lawrence Louis ATTISANO AKA "GIO", and that evidence of this offense will be found in the records of GIO ATTISANO's cell phone.

6.     As set forth in more detail below, this investigation relates to the involvement of GIO ATTISANO in setting a fire on July 16, 2020 at 421-423 Lamar Avenue, Pittsburgh, Pennsylvania 15221.   The investigation is being conducted by investigators from the Allegheny County Fire Marshals Office ("ACFM"), ATF and the Allegheny County Police Department ("ACPD").

<u>SEARCHES OF CELLULAR PHONE RECORDS</u>

7.     Based on records your affiant received from Verizon Wireless, pursuant to a Federal Grand Jury Subpoena, I know that telephone number 412-420-7611 is a Verizon phone number, and that Verizon Wireless' records relating to the customer's use of that number are stored at 150 Fayetteville St., Box 1011, Raleigh, NC, 27601-2957.   I also know, based on the aforementioned phone records your affiant received pursuant to a Federal subpoena that as of July 16, 2020, GIO ATTISANO's phone number was 412-420-7611.

8.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public.   I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephone to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."   Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.   Furthermore, the tower closest to a wireless device does

not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

9.      Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the targeted telephone.  I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

10.     Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the target telephone's user or users and may assist in the identification of co-conspirators and/or victims.

## PROBABLE CAUSE

11.     On July 16, 2020, at approximately 12:02 a.m., firefighters from the Pittsburgh Bureau of Fire responded to a residential structure fire at 421-423 Lamar Avenue, Pittsburgh, PA 15221, in the municipality of Wilkinsburg, PA. The affected structure was a duplex that was occupied by residents on both sides of the structure at the time of the fire.

12.     The entire duplex, to include units 421 and 423, is owned by Nathaniel MCLAUGHLIN and is occupied on one side, which is unit 421, by MCLAUGHLIN and his girlfriend. The adjoining side, unit 423, is occupied by tenants, who rent from MCLAUGHLIN.  The fire was reported by MCLAUGHLIN, who described the event as follows: MCLAUGHLIN heard an explosion, which he described as a loud boom, immediately preceded by a hissing sound, or air movement.  The explosion shook the structure and seemed to come from the rear of his residence.  MCLAUGHLIN ran to the kitchen, located in the rear of the residence, and from there he observed flames coming out of the window to his basement. Smoke filled his entire residence following these observations. MCLAUGHLIN and his girlfriend, Haley OVERMAN, then went next door to alert the rental tenants of the fire. All occupants were able to exit the residence safely without injuries and waited for responding firefighters.

13.     The ACFM was requested to conduct the fire scene investigation for the purposes of determining the area of origin and cause of the fire.  The area of origin was deemed to be in the rear basement entrance area underneath MCLAUGHLIN's side of the duplex.  Regarding the cause of the fire, the ACFM initially suspected that there had been a spontaneous ignition of planter items in the basement, and that the cause of the fire should

be classified as "accidental".  However, after further investigation later that same day, the
ACFM changed the classification from "accidental" to "incendiary" (arson).  In addition
to the interior rear portion of the basement, the area of origin was determined to include,
exterior areas at the rear of the structure.

14.     On the afternoon of July 16, 2020, an accelerant detection canine was
utilized by the ACFM for a sniff search of that area of origin.  The dog positively alerted
in several areas for the presence of an accelerant.  Several items of evidence were therefore
collected and submitted to the Allegheny County Crime Lab for laboratory analysis.  The
results of the analyses were positive for the presence of ignitable liquids in three of those
fire debris items from the area of origin. The fire resulted in approximately $30,000 in
damage to the property, but no injuries.

15.     On the same day of the fire, Allegheny County Fire Deputy Marshals
discovered a pair of partially burned black latex gloves, and a partially burned baseball hat,
in the area of the backyard to the residence.  The finger portion of a black latex glove was
also located immediately outside of the gate to the backyard of the residence, on the
walkway leading to the backyard.  On or about July 18, 2020, MCLAUGHLIN contacted
investigators and reported that he had discovered a wedding ring on the ground in the
approximate area where the burned finger portion of the glove had been found.  The ring
is described as a silver ring with no designs or initial engravings.

16.     The post-fire investigation has revealed that, on July 16, 2020, at
approximately 12:07 a.m. (which was approximately 5 minutes after the fire was reported),
a Subaru Outback with Pennsylvania license plate of GBM5262, registered to Claire
Pauline MCCANDLESS, was photographed by an Automated License Plate Recognition

device at the Squirrel Hill Tunnel.   Mrs. MCCANDLESS is GIO's wife, and MCCANDLESS is her maiden name.  This location is approximately 2.7 miles away from the aforementioned fire scene.  The vehicle was driving on Parkway 376 inbound, in lane 2, which is traveling away from the fire scene and in the direction of the ATTISANOs' residence.

17.     Post-fire investigation has also revealed that MCLAUGHLIN is a partial owner of Pittsburgh Brewing Ventures (PBV).  At the time of the fire, MCLAUGHLIN and GIO were business partners.  PBV's business, as well as MCLAUGHLIN's and GIO's respective relationships to PBV, were described by MCLAUGHLIN as follows: MCLAUGHLIN and GIO each owned 30% of the business, with the remaining 40% being owned by a group of investors.   During the weeks prior to the fire, according to MCLAUGHLIN, he and GIO's relationship had deteriorated to the point that MCLAUGHLIN had offered to buy GIO's share of PBV from GIO, and thereby have him removed from the business.   However, GIO refused the offer.   Consequently, MCLAUGHLIN and the investors set up a meeting for the evening of July 16, 2020, at which time MCLAUGHLIN intended to call for a forced buyout and ouster of GIO from PBV.  According to MCLAUGHLIN, prior to July 16, 2020, he told GIO of his intended actions for that meeting.  However, as explained below, the meeting never occurred.

18.     At approximately noon on July 16, 2020, which was approximately twelve hours after the fire was reported, GIO's wife sent a text message to MCLAUGHLIN stating that GIO had an emergency and was in the intensive care unit at the University of Pittsburgh Medical Center (UPMC) Mercy Hospital in Pittsburgh, PA. Claire ATTISANO asked MCLAUGHLIN to postpone the above referenced meeting scheduled for later that day.

GIO's wife did not tell MCLAUGHLIN what happened to GIO.  MCLAUGHLIN later learned that GIO's hospitalization was for burns to his body.

19.     On July 20, 2020, Allegheny County Police Department (ACPD) Detectives went to the ATTISANO residence located at 119 43rd Street, Pittsburgh, PA, 15201.  Claire ATTISANO was at home, but GIO was at UPMC Mercy Hospital.   The detectives interviewed Claire ATTISANO, who provided the following information: Claire and GIO ATTISANO own two vehicles, and both are registered in Claire's maiden name of MCCANDLESS.  The Subaru with PA license plate of GBM5262 is primarily operated by GIO ATTISANO.  On July 16, 2020, Claire ATTISANO was out of town on vacation in Rehoboth Beach, Delaware.  At approximately 6:50 a.m., GIO called her and stated that he had burned himself with grease while cooking bacon.  GIO stated to Claire that his sister was coming to pick him up and take him to the hospital.

20.     During the interview on July 20, 2020, Claire ATTISANO gave consent to ACPD Detectives to photograph her kitchen area. Claire stated that the grease had gotten onto the hardwood floors, but she did not know if the grease had caught fire.  Detectives noted that there was no visible evidence of smoke or staining from a cooking incident on the floors, countertops or cabinetry.  Claire stated to detectives that she thought that it was odd that GIO was cooking bacon so early in the morning. Claire advised that when she had gone to the hospital to see GIO, she took photographs on her cellular phone of burns that GIO had suffered to his face, hands, back, legs and feet. Claire showed these photographs to ACPD detectives.

21.     On July 20, 2020 ACPD detectives requested to see the Subaru Outback with PA license plate GBM5262, registered to Claire MCCANDLESS and primarily

operated by GIO ATTISANO. Claire gave detectives consent to look inside the vehicle and opened the driver side door for detectives. Detectives observed and photographed fire debris, specifically ash from some item having been burned, on the driver seat and on the center console area of the vehicle. Claire was asked to give consent for the detectives to collect evidence and conduct a thorough search of the vehicle. However, Claire did not consent.

22.     During the interview with Claire ATTISANO, the topic of the whereabouts of GIO's wedding ring was discussed. According to Claire ATTISANO, GIO's wedding ring is currently missing. Claire ATTISANO did not elaborate on how long GIO's wedding ring has been missing or where he may have lost it. Claire ATTISANO described the ring as a silver ring with no designs or personal engravings.

23.     On August 21, 2020, your affiant and ACPD Detectives interviewed Madeline GENT. GENT is a friend of GIO and Claire ATTISANO. During the interview, GENT told investigators that CLAIRE told GENT approximately 2 months ago that GIO had lost his wedding ring. GENT stated that to her knowledge, GIO owns two wedding rings, one being the actual ring from his wedding and the other is a cheaper version for everyday use. CLAIRE previously complained to GENT that she was unhappy that GIO does not where his ring daily. GENT does not know which of GIO's two rings was lost.

24.     On September 21, 2020, your affiant interviewed Dr. Jenny Ziembicki, who was one of the physicians who treated GIO after he arrived at UPMC Mercy on July 16, 2020. According to Dr. Ziembicki, GIO explained to hospital personnel that he had sustained his bodily burns in an accident early on July 16, 2020 involving bacon grease. Dr. Ziembicki further explained that, according to GIO, he had accidentally burned himself

with bacon grease while cooking bacon on the stove, which caused him to spill the bacon grease onto the kitchen floor, which then caused him to slip and fall into the hot grease on the floor. However, according to Dr. Ziembicki, who is in charge of UPMC Mercy's Burn Unit, GIO's injuries were not consistent with GIO's claims. In particular, Dr. Ziembicki saw no evidence of grease burn splash marks on GIO's arms, and the TBSA ("Total Body Surface Area") that was burned was much more extensive than would be expected from kitchen grease burns. Dr. Ziembicki also noticed clearly defined lines of demarcation on GIO's face that were not consistent with grease burns, but were more consistent with GIO wearing some type of face covering at the time he sustained those burns. Finally, Dr. Ziembicki noticed that GIO's facial hair, including his eyebrows, had been singed, which is more consistent with flame exposure than a grease burn. Dr. Ziemicki further stated that with grease burns, physicians in the burn unit would expect to see full thickness burns, and GIO's burns were not full thickness burns.

### CONCLUSION

25.     Based upon the foregoing, there is probable cause to conclude that, in the Western District of Pennsylvania, GIO ATTISANO has committed a violation of Title 18, United States Code, Section 844(i).  There is also probable cause to believe that evidence of that offense will be found in the records and physical location data of GIO ATTISANO's cell phone, number 412-420-7611. The records and physical location data, by themselves and/or in conjunction with other investigative steps, will constitute evidence as to where that telephone and GIO ATTISANO were located when the offense occurred.  In particular, there is probable cause to believe that, within the records of GIO ATTISANO's cell phone, number 412-420-7611, maintained by Cellco Partnership dba Verizon Wireless, as

10

described in Attachment A and Section I of Attachment B, the evidence of GIO ATTISANO's presence near and commission of the violation of 18 U.S.C. § 844(i) on July 15 and 16, 2020, will be found, as described in Section II of Attachment B.

The above information is true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

*/s/ William Davis*
William Davis, Special Agent, ATF

Sworn and subscribed before me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 23rd day of September, 2020

_____
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE

11

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 412-420-7611, which information is stored at premises controlled by Cellco Partnership dba Verizon Wireless ("the Provider"), headquartered at c/o CT Corporation System, 150 Fayetteville St., Box 101, Raleigh, NC 27601-2957.

## ATTACHMENT B

### Particular Things to be Seized

### I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the following information pertaining to the Account listed in Attachment A for the time period July 15 and 16, 2020:

  a.  The following information about the customers or subscribers of the Account:

   i.  Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.  Local and long distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.  Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 844(i) involving Gio Attisano and others during the period July 15 and 16, 2020.